UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ASHLEY NICOLE SULLIVAN,

        Plaintiff,

v.                                   CASE NO. 3:14-cv-1445-J-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application for supplemental security income ("SSI").

Plaintiff alleges her disability began on November 1, 2010.  (Tr. 158.)  The

assigned Administrative Law Judge ("ALJ")[2] held hearings on November 16, 2012

and April 9, 2013, at which Plaintiff was represented by an attorney.  (Tr. 30-57.)

The ALJ found Plaintiff not disabled since June 1, 2011, the date her application

was filed.  (Tr. 16-24.)

In reaching the decision, the ALJ found that Plaintiff had the following

severe impairments: a history of seizures, monovision due to left eye blindness,

status post Crouzon's syndrome, and a learning disorder not otherwise specified

---

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge.  (Docs. 18, 21.)

[2] The first hearing was held before ALJ David W. Carstetter and the second
before ALJ Robert Droker.  ALJ Droker issued the decision in this case.

(NOS).  (Tr. 18.)  The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of medium work.  (Tr. 20.)

Plaintiff is appealing the Commissioner's decision that she was not disabled since June 1, 2011.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into

2

account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ failed to adequately address the impact of her brachydactyly (*i.e.*, disproportionately short fingers and toes), syndactyly (*i.e.*, webbing of appendages), and severely impaired fine motor speed (bilaterally),[3] on her ability to perform the manipulative requirements of any work.  Plaintiff explains that if the fine motor skills are severely impaired, it would be hard to do any job that requires use of the hands because the actual job functions would have to be performed extremely slowly.  Secondly, Plaintiff argues that although the ALJ seemingly credited Dr. Glen's opinion, he misread the opinion as supporting a present ability to perform work on a sustained full-time basis.

The Court does not find any reversible error.  The ALJ found that Plaintiff had the RFC to perform medium work with the following limitations: "The claimant has monovision and must avoid ladders or unprotected heights as well as the

---

[3] In a February 14, 2013 report following a neuropsychological consultation, Dr. Tannahill Glen, an examining physician, observed, *inter alia*, that Plaintiff's "[f]ine motor speed was severely impaired bilaterally, and she was not in [a] hurry at all on the timed task."  (Tr. 445.)

operation of heavy moving machinery.  In addition, she is limited to simple tasks and requires a low stress work environment that does not involve a production line." (Tr. 20.)  The ALJ discussed and gave "great weight" to Dr. Glen's findings because "they are consistent with the substantial evidence, consider the progressive nature of the claimant's cognitive difficulties, and are based on Dr. Glen's independent psychiatric evaluation of the claimant as a non-treating physician." (Tr. 22.)  The ALJ added: "This finding is especially true considering the claimant's testimony that she can still complete some activities of daily living, including performing limited household chores and caring for her minor sisters—a physically and mentally demanding task." (*Id.*)

Turning to Plaintiff's first argument, although it does not appear that the ALJ's RFC assessment includes limitations from brachydactyly and syndactyly, or incorporates Dr. Glen's opinion that Plaintiff has severely impaired fine motor speed bilaterally, there is no error because Plaintiff did not allege disability due to these conditions and did not allege problems with her hands, feet, fingers, or toes at the administrative level.  *See Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. Feb. 19, 2010) (stating that the ALJ had no duty to consider plaintiff's diagnosis of chronic fatigue syndrome because plaintiff, who was represented at the hearing, did not allege disability due to this condition either when she filed her claim or at the administrative hearing); *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. May 18, 2005) (per curiam) (stating that evidence of mental

4

impairments and intellectual functioning, which was not listed in the application or presented at the administrative hearing, particularly given that the claimant was represented by counsel, did not need to be considered by the ALJ because the ALJ was not put on notice of this evidence).

Moreover, there is no indication that these conditions created functional limitations beyond those found by the ALJ. There is substantial evidence in the record that Plaintiff's conditions did not affect her standing, walking, or use of the hands or fingers. (*See, e.g.*, Tr. 310, 312, 314, 316-20, 354-55, 358, 360, 368, 371, 404, 414, 425, 432, 441, 449.) Although Dr. Glen opined, in the context of a neuropsychological, not physical, examination of Plaintiff, that her "[f]ine motor speed was severely impaired bilaterally" (Tr. 445), Dr. Glen did not diagnose Plaintiff with any condition related to her hands or fingers and did not impose any physical limitations in this respect. Moreover, in the context of Dr. Glen's other statements that Plaintiff "was not in [a] hurry at all on the timed task," she "worked extremely slowly in testing," and that "there was obviously a component of slow speed of work and reluctance to participate in testing and tendency to give up easily that was present today and likely affected her performance" (*id.*), as well as the lack of other evidence in the record to support manipulative or other limitations beyond those already included in the RFC, the ALJ's RFC assessment is supported by substantial evidence.

Plaintiff's second argument is that although the ALJ gave Dr. Glen's

5

opinion "great weight," he misread the opinion as supporting a present ability to

perform work on a sustained full-time basis.  The Court finds that the ALJ's

interpretation of Dr. Glen's opinion was reasonable.  Dr. Glen's report provides in

relevant part:

> By observation, the patient appeared younger than her stated age. . .
> Her presentation was overly child-like, and she spoke in a very soft
> whispery voice and tended to defer to her stepfather for any
> responses. . . .
> I should note that her child-like presentation was a bit variable in the
> sense that sometimes she was more animated and conversant than
> other times.
> . . .
> In short, although there definitely appears to be a language-based
> learning disability consistent with the patient and her stepfather's
> report, it seems that nonverbal reasoning is actually average and
> may well represent a solid strength for this young lady.
> Although certainly a language-based learning disability can be quite
> challenging in terms of acquiring and demonstrating job skills, it is
> not normally incapacitating, and certainly with the patient's solid
> strength in nonverbal reasoning demonstrated today, there definitely
> appears that she has some skills to build on from a cognitive
> perspective.  I believe Miss Sullivan can function at a much more
> independent level that [sic] her current activities suggest.
> However, given her very immature and child-like presentation and
> extremely limited level of independence at this point, this will most
> likely be a very gradual process and she may require external
> supports as she continues to mature over time and demonstrate
> greater independence.

(Tr. 444-46.)

When considered as a whole, Dr. Glen's report is not inconsistent with the

ALJ's findings.  First, Dr. Glen stated that Plaintiff's presentation was overly child-

like, but she also stated that her "presentation was a bit variable in the sense that

sometimes she was more animated and conversant than other times." (Tr. 445.) Further, Dr. Glen stated that although "a language-based learning disability can be quite challenging in terms of acquiring and demonstrating job skills, it is not normally incapacitating," and certainly with Plaintiff's "solid strength in nonverbal reasoning," she has "some skills to build on from a cognitive perspective." (Tr. 446.) Dr. Glen also stated that Plaintiff "can function at a much more independent level tha[n] her current activities suggest," but "this will most likely be a very gradual process and she may require external supports." (*Id.*)

However, Dr. Glen did not opine as to how long this process might last and she did not see Plaintiff again for a follow-up examination. The ALJ saw Plaintiff at the second hearing on April 9, 2013 and had the opportunity to examine her, which was almost two months after Dr. Glen's report was issued. Moreover, Dr. Glen did not impose any work-related limitations. Therefore, in light of the totality of Dr. Glen's opinions and the other substantial evidence in the record supporting the RFC, the ALJ's interpretation of Dr. Glen's opinions was not unreasonable. Based on the foregoing, the Commissioner's decision is due to be affirmed.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on August 29, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

8